ACCEPTED
01-14-00768-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/16/2015 9:23:37 AM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00768-CR
IN THE
COURT OF APPEALS
FOR THE
FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

11/16/2015 9:23:37 AM

CHRISTOPHER A. PRINE
Clerk

**ROBERT WAYNE ROLLINS**, Appellant
**V.**
**THE STATE OF TEXAS**, Appellee

Appealed from the 405TH Judicial District Court
of Galveston County, Texas
Cause No. 13-CR-3062

**BRIEF FOR THE STATE OF TEXAS**

**JACK ROADY**
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY

**ALLISON LINDBLADE**
ASSISTANT CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY
STATE BAR NO.  24062850
600 59TH STREET, SUITE 1001
GALVESTON, TX 77551
(409) 766-2355, FAX (409) 765-3261
allison.lindblade@co.galveston.tx.us

ORAL ARGUMENT NOT REQUESTED

i

## IDENTITY OF PARTIES AND COUNSEL

Presiding Judge                        Hon. Michelle M. Slaughter

Appellant                              Robert Wayne Rollins

Appellee                               The State of Texas

Attorneys for Appellant                Haley Sloss – Trial

                                       Kevin Stryker – Appeal

Attorneys for State                    T. Philip Washington – Trial

                                       Chris Henderson – Trial

                                       Allison Lindblade – Appeal

The Clerk's Record is referred to in the State's Brief as "C.R. cause number: page". The Reporter's Record is multiple volumes and is referred to as "R.R. volume number: page". Motion for New Trial is referred to as "MNT" and the Verification Hearing is referred to as "VH".

# TABLE OF CONTENTS

Identity of Parties and Counsel ii

Table of Contents iii

Index of Authorities viii

Summary of the Argument 1

Statement of Facts 2

First Issue 3

The record proves that Rollins knew he resisted. The record proves that Rollins was in command of his actions as he struggled with the officer.

Viewing the evidence in the light most favorable to the verdict, how's there insufficient evidence to prove Rollins caused the officer bodily injury when the officer was badly injured as a result of the struggle that Rollins induced?

State's Reply 3

I. Sufficiency standard of review 4

II. Assault on a public servant 5

III. By physically struggling with Officer Parris, Rollins Recklessly caused him bodily injury. 6

IV. Based upon Rollins testimony that he was in control when he resisted, the jurors could have rationally inferred that his recklessness caused Officer Parris' bodily injury. 13

V. Conclusion: the evidence supports the jury's verdict. 15

Second Issue 16

While the jury must unanimously agree about the

occurrence of a single offense, it need not be unanimous about the specific manner or means of how that offense was committed.

How then was Rollins' right to a unanimous verdict violated if the jury was charged with alternate manner and means of a the single crime of assault on a public servant?

State's Response    16

I.    Jury charge error standard of review    17

II.    Jury unanimity    18

III.    The jury reached a unanimous verdict because Rollins was charged with one offense which could've been committed several ways.    19

Third Issue    24

When a trial court includes an instruction on a presumed fact in the jury charge, the Texas legislature requires the trial court to include a Section 2.05(a)(2) instruction.

How was Rollins harmed by the omission of a Section 2.05(a)(2) instruction when the evidence of Rollins' understanding that Officer Parris was an on-duty police officer was not disputed at trial?

State's Response    24

I.    Standard of review    24

II.    Presumption instructions    25

III.    The evidence was unchallenged that Rollins understood Officer Parris was an on-duty police officer.    26

IV.    Conclusion: there was no harm because Rollins acknowledged that Officer Parris was an on-duty police officer.    27

Fourth Issue    28

Rollins maintains that he's entitled to a new trial under Texas Rule of Appellate Procedure 34.6(f)(4) because the trial court reporter thought a key exhibit was lost.

How is Rule 36.4(f) applicable when there is no lost evidence?

State's Response    28

I.    Rule of Appellate Procedure 34.6    28

II.    State's Exhibit 1 was never lost—it was always in the exhibit closet. The court reporter just couldn't find it.    30

Fifth, Seventh, and Eighth Issues    32

Rollins wasn't entitled to the defensive jury charge issues he complains about. But even so, trial counsel was under no duty to raise every defense available, so long there was an objectively reasonable defense presented.

Rollins' trial counsel had a clear trial strategy: to negate the *mens rea* element of assault.

How was trial counsel ineffective when these defensive issues would've conflicted with the clear laid out trial strategy and Rollins' own testimony?

State's Response    32

I.    Ineffective assistance of counsel    34

II.    Even if Rollins' trial counsel had requested a self-defense instruction in the jury charge, Rollins wasn't entitled to it.    36

III.    Rollins' trial counsel wasn't ineffective for not requesting a self-defense instruction in the jury charge because it wasn't

supported by the evidence.     39

IV.     Even if we presume that he was entitled to the defensive instructions, Rollins has not shown that he received ineffective assistance of counsel at trial.     40

V.     Rollins wasn't entitled to a voluntariness instruction because he testified that he was in control of his actions.     45

VI.     Rollins admitted to the jury that he was in control.     45

VII.     Rollins hasn't shown that his trial counsel was ineffective for not requesting a lesser-included offense in the charge. 47

VIII.     Rollins wasn't entitled to the lesser-included offense of resisting because there is no evidence that he's guilty of only resisting.     48

IX.     The defensive theory was inconsistent with requesting the lesser-included resisting arrest.     49

X.     Even if….the outcome still wouldn't changed.     51

Sixth Issue     52

Defense counsel is not ineffective for failing to object to admissible evidence.

How was Rollins' trial counsel ineffective for not objecting at trial when the drugs found on the scene were properly admitted to show motive and to rebut the defensive theory that Rollins wasn't struggling with the officer, he was just trying to make sure his kids were safe?

State's Response     52

I.     Admission of evidence standard of review     53

II.      Extraneous evidence      53

III.     The drugs found at the scene were properly admitted into evidence.      55

IV.     Rollins' cannot show that the outcome of the trial would've been different if trial counsel had objected to the evidence.      57

Conclusion and Prayer      60

Certificate of Service      61

Certificate of Compliance      61

# INDEX OF AUTHORITIES

## CASES

*Aguirre v. State,* 732 S.W.2d 320, 326 (Tex. Crim. App.1982) ................... 19, 20

*Alexander v. State,* 757 S.W.2d 95, 100 (Tex. App. —Dallas 1988, pet. ref'd) 26, 27

*Alford v. State,* 866 S.W.2d 619, 624 (Tex. Crim. App. 1993). ......................... 46

*Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) ................... 18, 25

*Alvarado v. State,* 704 S.W.2d 36 (Tex. Crim. App. 1985) ............................... 48

*Amador v. State*, 221 S.W.3d 666, 677, fn 48 (Tex. Crim. App. 2007). ............ 30

*Anderson v. State*, 11 S.W.3d 369, 371-72 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ...................................................................................... 42

*Arevalo v. State,* 943 S.W.2d 887, 889–90 (Tex. Crim. App. 1997) .................. 50

*Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) ............... 17, 18

*Bailey v. State*, 01-12-00200-CR, 2015 WL 4497773, at *8-9 (Tex. App.— Houston [1st Dist.] July 23, 2015) ............................................................. 36, 37

*Barfield v. State*, 202 S.W.3d 912, 915-16 (Tex. App.—Texarkana 2006, pet. ref'd) .............................................................................................. 20, 21

*Bignall v. State,* 887 S.W.2d 21, 23 (Tex. Crim. App. 1994) ............................ 50

Blondett v. State, 921 S.W.2d 469, 477 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd) ...................................................................................... 30

*Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002) ................................. 37

*Brewer v. State*, 08-00-00424-CR, 2002 WL 266816, at *5 (Tex. App.—El Paso Feb. 26, 2002, pet. ref'd)................................................................ 26

*Brooks v. State,* 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.).......... 5

*Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). ....................... 60

*Byars v. State*, 14-07-00824-CR, 2008 WL 4647391, at *2 (Tex. App.—Houston [14th Dist.] Oct. 21, 2008, no pet.). ......................................................... 13, 14

*Cantrell v. State,* 731 S.W.2d 84, 89 (Tex. Crim. App. 1987) ........................... 55

*Casey v. State,* 215 S.W.3d 870, 880 (Tex. Crim. App. 2007).................... 55, 58

*Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)....................................................................................... 60

*Clark v. State*, 461 S.W.3d 244, 247-49 (Tex. App.—Eastland  pet. ref'd 2015). ................................................................................................................ 5, 15

*Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)......................... 4

*Copeland v. State*, 14-00-00386-CR, 2001 WL 930883, at *1 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, no pet.) ......................................... 37, 44

*Cosio v. State,* 353 S.W.3d 766,777 (Tex Crim. App. 2011) ............................ 17

Crown Life Ins. Co. v. Estate of Gonzalez, 820 S.W.2d 121, 121 (Tex. 1991). 30

*Dannhaus v. State*, 928 S.W.2d 81, 86 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ..................................................................................... 52, 53

*Davis v. State,* 930 S.W.2d 765, 768 (Tex. App.-Houston [1st Dist.] 1996, pet. ref'd)......................................................................................................... 49

*De La Paz v. State,* 279 S. W.3d 336, 343 (Tex. Crim. App. 2009). ................. 54

*Escobar v. State,* 227 S.W.3d 123, 127 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd) ................................................................................................ 43

*Ex parte Nailor,* 149 S.W.3d 125, 133 (Tex. Crim. App. 2004) ...................... 40

*Ex parte Thompson*, 13-06-290-CR, 2007 WL 2459978, at \*7 (Tex. App.— Corpus Christi Aug. 30, 2007, no pet.). ....................................................... 43

*Ex parte Varelas,* 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) ...................... 59

*Ex Parte White,* 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) ........................... 51

*Ford v. State,* 112 S.W.3d 788, 794 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ............................................................................................................. 40

*Francis v. State,* 36 S.W.3d 121, 125 (Tex. Crim. App. 2000). ...................... 18

*Fregia v. State*, 01-13-00312-CR, 2014 WL 527535, at \*7 (Tex. App.—Houston [1st Dist.] pet. ref'd, 2014) ................................................................... 42, 45

*Fuentes v. State,* 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) ...................... 38

Gallagher v. Fire Ins. Exchange, 950 S.W.2d 370, 371 (Tex. 1997) ................ 30

*Garcia v. State,* 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). ........................ 4

*Garrett v. State*, 159 S.W.3d 717, 721 (Tex. App.—Fort Worth 2005) ............. 28

*Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) ............................. 4

*George v. State,* 681 S.W.2d 43, 45 (Tex. Crim. App. 1984) ...................... 14, 46

*Gigliobianco v. State,* 210 S.W.3d 637, 641—42 (Tex. Crim. App. 2006). .......... ......................................................................................................... 56, 57, 58

*Glenn v. State*, 01-13-00640-CR, 2015 WL 831995, at \*2 (Tex. App.—Houston [1st Dist.] pet. ref'd 2015) .......................................................................... 43

*Goodin v. State,* 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) .................................................................................................. 6

*Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). ................. 37

*Gumpert v. State,* 48 S.W.3d 450, 454 (Tex. App.—Texarkana 2001, pet. ref'd) ............................................................................................... 13, 15

*Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) .......................... 33

*Hathorn v. State,* 848 S.W.2d 101, 118 (Tex.Crim.App.1992) ......................... 53

*Hensley v. State*, 01-14-00615-CR, 2015 WL 6081798, at *5 (Tex. App.— Houston [1st Dist.] Oct. 15, 2015, no. pet. h.) ................................................ 55

*Hernandez v. State*, 01-12-01080-CR, 2014 WL 1101587, at *2-3 (Tex. App.— Houston [1st Dist.] Mar. 20, 2014, no pet.). ............................................. 37, 49

*Herrera v. State,* 11 S.W.3d 412, 415—16 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ...................................................................................... 58

*Holford v. State*, 177 S.W.3d 454, 461-62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ...................................................................................... 17

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). ............................. 4

*Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984) .......................... 37

*Jackson v. State*, 08-05-00135-CR, 2006 WL 1711098, at *4 (Tex. App.—El Paso June 22, 2006, no pet.) ...................................................................... 49

*Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) ....................... 37

*Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979) .............................................. 4

*Jaynes v. State*, 216 S.W.3d 839, 844 (Tex. App.—Corpus Christi 2006, no

pet.).......................................................................................................... 32, 33

*Jefferson v. State,* 189 S.W.3d 305 (Tex. Crim. App. 2006)............................. 21

*Jimenez v. State*, 419 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist.] 2013,
    pet. ref'd)................................................................................... 26, 27, 28

*Johnson v. State*, 151 S.W.3d 193, 196 (Tex. Crim. App. 2004). ...................... 31

*Johnson v. State,* 169 S.W.3d 223, 239 (Tex. Crim. App. 2005) ....................... 43

*Johnson v. State,* 364 S.W.3d 292, 298 (Tex. Crim. App. 2012). ........................ 5

*Kitchens v. State,* 823 S.W.2d 256 (Tex. Crim. App.1991) ......................... 17, 19

*Landrian v. State*, 268 S.W.3d 532, 535-36 (Tex. Crim. App. 2008). ... 18, 22, 23

*Lane v. State,* 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). ............................. 5

*Lofton v. State,* 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) ................ 13, 15, 50

*Lopez v. State,* 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)............... 36, 37, 49

*Lucio v. State*, 351 S.W.3d 878, 891-92 (Tex. Crim. App. 2011). ..................... 30

*Lynn v. State,* 860 S.W.2d 599, 605 (Tex. App.-Corpus Christi 1993, pet. ref'd).
    ................................................................................................................. 49, 51

*MacDonald v. State,* 761 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1988,
    pet. ref'd).......................................................................................................... 39

*Martinez v. State,* 129 S.W.3d 101, 103 (Tex. Crim. App. 2004). ..................... 19

*Mayes v. State,* 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) .............................. 60

*McArthur v. State,* 132 Tex. Crim. 447, 105 S.W.2d 227, 230 (1937) .............. 20

*Menefield v. State,* 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) .................... 38

*Montgomery v. State,* 810 S.W.2d 372, 378—79 (Tex. Crim. App. 1990) ........ 43

*Moses v. State,* 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) .................... 55, 56

*Nava v. State,* 415 S.W.3d 289, 307—08 (Tex. Crim. App. 2013) .............. 37, 49

*Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). .........................
....................................................................................... 17, 18, 19, 24, 27

*Okonkwo v. State,* 398 S.W.3d 689, 693 (Tex. Crim. App. 2013) .................... 36

*Pena v. State*, 14-13-00102-CR, 2014 WL 2767398, at *5 (Tex. App.—Houston
[14th Dist.] pet. ref'd, 2014). ........................................................ 61

*Pena v. State*, 725 S.W.2d 505, 506-07 (Tex. App.—Corpus Christi 1987, no
pet.) ................................................................................................ 47

*Ramos v. State*, 991 S.W.2d 430, 434 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref'd) ............................................................................................. 25

*Randolph v. State,* 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.) ...... 6

*Robertson v. State,* 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). ............. 36, 44

*Rodgers v. State*, 01-03-00850-CR, 2004 WL 2363830, at *2 (Tex. App.—
Houston [1st Dist.] Oct. 21, 2004, no pet.) ...................................... 46

*Rose v. Clark,* 478 U.S. 570, 583, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986)
...................................................................................................... 26
*Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993) .............. 50

*Rowell v. State*, 66 S.W.3d 279, 282 (Tex. Crim. App. 2001) .......................... 30

*Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Crim.App.1986) .............................. 39

*Schiele v. State*, 01-13-00299-CR, 2015 WL 730482, at *6 (Tex. App.—

Houston [1st Dist.] pet. ref'd, 2015). ............................................ 55, 56, 57, 58

*Shanklin v. State,* 190 S.W.3d 154, 159 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) ................................................................. 38, 48, 50, 51

*Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007)..................... 39, 40

*Smith v. State*, 436 S.W.3d 353, 377 (Tex. App.—Houston [14th Dist.] 2014)  19

*State v. James,* 698 P.2d 1161, 1166 (Alaska 1985)......................................... 24

*Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). .............................................................. 35, 36, 37, 52, 60

*Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)...........................
.................................................................... 36, 37, 38, 44, 59

*Velez v. State*, 01-14-00544-CR, 2015 WL 3522835, at *4 (Tex. App.—Houston [1st Dist.] June 4, 2015) ................................................................ 40

*Vives v. State*, 01-01-00296-CR, 2002 WL 31388695, at *3 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, no pet.). ...................................................... 49

*Washington v. State*, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)................................................................... 14, 46

*Wawrykow v. State,* 866 S.W.2d 87, 88—89 (Tex. App.—Beaumont 1993, pet. ref'd)................................................................................... 6

*Webber v. State,* 29 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist] 2000, pet. ref'd)................................................................................. 26

*Wert v. State,* 383 S.W.3d 747, 755 (Tex. App.-Houston [14th Dist.] 2012, no pet.)..................................................................................... 19

*Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). .................. 5, 50

*Williams v. State*, 01-07-00632-CR, 2009 WL 350608, at *4 (Tex. App.—

Houston [1st Dist.] Feb. 12, 2009, no pet.) ........................................ 38, 48, 49

*Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). ....................... 4

*Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ...................... 55

*Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) ...................... 47

*Williams v. State,* No. 08-02-00310-CR, 2004 WL 309265 at *6 (Tex. App.-El Paso, Feb. 19, 2004, pet. ref'd) ....................................................... 49

*Winegarner v. State,* 235 S.W.3d 787, 790 (Tex. Crim. App. 2007) ................. 54

*Wingfield v. State,* 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd) ................................................................................... 5, 6

*Wood v. State,* 4 S.W.3d 85, 87 (Tex. App.-Fort Worth 1999, pet. ref'd) ......... 49

*Young v. State,* 341 S.W.3d 417, 422 (Tex. Crim. App. 2011) .......................... 19

*Young v. State*, 991 S.W.2d 835, 838 (Tex.Crim.App.1999) ................. 39, 40, 42

**STATUTES**

TEX. PEN. CODE § 38.03. ................................................................ 50

TEX. PEN. CODE § 9.31. ................................................................. 39

TEX. PENAL CODE § 22.01 .......................................................... 5, 23, 27

TEX. PENAL CODE § 6.01(a) ........................................................ 14, 46

TEX. PENAL CODE §§ 2.05 .............................................................. 26

## RULES

TEX. R. APP. P. 34.6(a)(1). ................................................................. 29

TEX. R. EVID. 403 .............................................................................. 55

TEX. R. EVID. 404(b). ........................................................................ 55

**TO THE HONORABLE COURT OF APPEALS:**

Now comes Jack Roady, Criminal District Attorney for Galveston County, Texas, and files this brief for the State of Texas.

## SUMMARY OF THE ARGUMENT

Robert Rollins brings eight issues on appeal in order to reverse his assault on a public servant conviction and 28 years sentence. The first issue contends that the evidence was insufficient to support the jury's finding of guilt. The jury viewed a video that showed Rollins actively engaging himself in a struggle or fight with an officer who tried to detain him. The jury heard the officer testify about the injury he received as a result of Rollins refusing to comply. The evidence was sufficient.

Of the remaining issues, two issued directly claim jury charge error. However, Rollins made no objections to the jury charge at trial. Because of the strong proof of evidence, Rollins prove egregious harm even if there was error in the charge.

In his last four issues, Rollins claims he didn't receive effective assistance of counsel. Rollins claims his counsel failed to request a jury charge instruction on self-defense, voluntariness, and failed to include a lesser-included offense of resisting arrest. First, Rollins wasn't entitled to any of these items in the charge.

But, even if he was, his counsel still had a reasonable trial strategy for not requesting them. It was clear throughout the trial that Rollins' trial strategy was how he had no intent to harm the officer. He even denied that he was reckless in his actions. If the defense strategy and Rollins' testimony was that there was no intent, there was a reasonable explanation for not requesting items in the charge that required the element of intent.

For all these reasons, Rollins issues should be overruled and the trial court's conviction affirmed.

## STATEMENT OF FACTS

A summary of the facts is included in the first issue.

<div style="border: 1px solid black; padding: 20px;">

### FIRST ISSUE

**The record proves that Rollins knew he resisted. The record proves that Rollins was in command of his actions as he struggled with the officer.**

**Viewing the evidence in the light most favorable to the verdict, how's there insufficient evidence to prove Rollins caused the officer bodily injury when the officer was badly injured as a result of the struggle that Rollins induced?**

</div>

### STATE'S REPLY

Rollins claims the State didn't prove that he intentionally or knowingly or recklessly caused bodily injury to Officer Parris or that Officer Parris received bodily injury from Rollins' actions.[1] A review of the record shows that there is sufficient evidence from which the trier of fact could've determined beyond a reasonable doubt that Rollins knowingly or intentionally or recklessly injured Officer Parris while the officer was acting in the lawful discharge of his official duties because Rollins continually refused to submit to commands.

---

[1] Rollins brief, pp. 11-18.

## I.      *Sufficiency standard of review*

When reviewing the sufficiency of the evidence, the appellate court views all of the evidence in the light most favorable to the verdict and determines, based on that evidence and any reasonable inferences therefrom, whether a rational jury could have found the elements of the offense beyond a reasonable doubt.[2] The reviewing court also considers both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence.[3] Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.[4] The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense.[5]

The reviewing court does not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the factfinder.[6] Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of

---

[2] *See Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979)).
[3] *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
[4] *See Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).
[5] *See Garcia v. State,* 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).
[6] *See Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

the verdict.[7]

## II.    *Assault on a public servant*

A person commits assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty.[8]

Assault on a public servant must be caused by some kind of bodily injury.[9] The Texas Court of Criminal Appeals has broadly interpreted the definition of bodily injury to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching."[10] An assault against a public servant is a result-oriented offense.[11] The focus is on the result of the defendant's action and his culpable mental state, not on the precise act or the nature of the conduct committed by the defendant.[12] In addition, "a jury may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it."[13]

---

[7] *See Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).
[8] *See* TEX. PENAL CODE § 22 .01(a)(1), (b)(1).
[9] TEX. PENAL CODE § 22.01.
[10] *Lane v. State,* 763 S.W.2d 785, 786 (Tex. Crim. App. 1989).
[11] *Brooks v. State,* 967 S.W.2d 946, 950 (Tex. App.—Austin 1998, no pet.); *see Johnson v. State,* 364 S.W.3d 292, 298 (Tex. Crim. App. 2012).
[12] *Johnson,* 364 S.W.3d at 298; *Brooks,* 967 S.W.2d at 950; *Clark v. State*, 461 S.W.3d 244, 247-49 (Tex. App.—Eastland  pet. ref'd 2015).
[13] *Wingfield v. State,* 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Randolph v. State,* 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.)).

Juries may utilize common sense and apply common knowledge gained from ordinary experiences in life to draw reasonable inferences from the evidence.[14]

### III. By physically struggling with Officer Parris, Rollins recklessly caused him bodily injury.

On November 11, 2013, Officer Gregory Parris worked the evening watch on patrol.[15] Officer Parris testified that he wore a standard issue uniform and drove a marked patrol car that night.[16] Officer Parris told the jury that at approximately 9 p.m.,[17] he made a traffic stop because he heard really loud music coming from a vehicle.[18] Galveston has a noise ordinance that requires a permit for loud speakers or public announcement speakers.[19]

Officer Parris said that he couldn't see through all the windows in Rollins' car because they were dark tinted.[20] He could see through the front windshield.[21] When Officer Parris pulled up behind Rollins and turned on the overhead lights,

---

[14] *Id.* (citing *Wawrykow v. State,* 866 S.W.2d 87, 88—89 (Tex. App.—Beaumont 1993, pet. ref'd) (finding that a rational jury could have inferred that pushes to the chest caused "physical pain")); *see also Goodin v. State,* 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd) (stating that people of common intelligence understand what naturally causes physical pain).
[15] R.R.III:23.
[16] R.R.III:23.
[17] Rollins brief refers to 9 a.m., p. 1, but Officer Parris testified to working the night watch.
[18] R.R.III:23.
[19] R.R.III:21.
[20] R.R.III:25, 29.
[21] R.R.III:29.

Rollins turned off the road but he didn't immediately stop.[22] Officer Parris told the jury that Rollins had several opportunities to stop the car but he just kept going.[23] Officer Parris testified had to use his speaker to tell Rollins to stop the vehicle.[24] Officer Parris told the jury, based upon his training, that when a car doesn't stop immediately it is because they're buying time to retrieve something, maybe a weapon or drugs.[25] Rollins could've also been trying to find a well-lit area.[26]

Officer Parris testified that he approached the vehicle with his gun drawn because he couldn't see inside the vehicle due to the dark tinted windows.[27] Officer Parris didn't hear Rollins initially say, "I need to call my wife. My kids are in the car."[28] He only heard, "Man, this is what I got" when Rollins handed him a bag of what looked like marijuana.[29] Officer Parris testified that the traffic stop then changed from a loud noise ordinance violation to a drug offense.[30]

Officer Parris told Rollins to get out of the car.[31] Rollins didn't get out of

---

[22] R.R.III:30.
[23] R.R.III:30; State's Exhibit No. 1 (Officer Parris' patrol car video).
[24] R.R.III:30; State's Exhibit No. 1.
[25] R.R.III:30-31.
[26] R.R.III:31.
[27] R.R.III:31-32.
[28] R.R.III:32, 50.
[29] R.R.III:32.
[30] R.R.III:33.
[31] R.R.III:34.

the car so Officer Parris opened the door.[32] Officer Parris testified that he saw Rollins turn away from him, dig in the center console, and fumble through papers that are in the center console.[33] Twenty seconds went by and Rollins still didn't get out of the car.[34] Officer Parris told Rollins, "Forget about that crap. Get out of the car."[35]

Officer Parris told the jury that he then saw Rollins dive across the front right passenger seat to reach underneath the passenger seat.[36] He thought Rollins might be reaching for a gun.[37] Rollins confirmed Officer Parris had a reasonable fear because Rollins was reaching for a black Iphone in a black case. Officer Parris told the jury that he felt like his life was on the line so he started to take out his gun when he noticed the children in the back seat.[38] Officer Parris testified that he reholstered his gun because of the children in spite of the danger he felt he was in.[39]

Officer Parris testified that when Rollins wouldn't voluntarily come out of

---

[32] The patrol car video shows that Officer Parris waited approximately 20 seconds after he asked Rollins to get out of the car until he pulled him out of the car. *See* State's Exhibit 1.
[33] R.R.III:33.
[34] R.R.III:33; State's Exhibit 1.
[35] R.R.III:33.
[36] R.R.III:33.
[37] R.R.III:33.
[38] R.R.III:33.
[39] R.R.III:33-34.

the car, he tried to pull Rollins out of the car.[40] Officer Parris said that he went inside the car to get Rollins out but Rollins pulled away and was kicking, pushing, swinging his head around the entire time.[41] Once he pulled Rollins from the car, he had a hold of Rollins and put him face down on the ground.[42] Officer Parris told Rollins, "Get on the ground" and "lay down on the ground."[43] But Rollins didn't comply.[44] Instead, Rollins stood up on his feet.[45] During this time Rollins said, "I'm black. My kids are in the car" and, "Man, stop this. Stop this. My kids, my kids."[46]

Officer Parris and Rollins struggled with Officer Parris trying to get Rollins to lie down on the ground and Rollins trying to stand to his feet.[47] Rollins was 6' tall to Officer Parris' 5'8".[48] Officer Parris had a grip around Rollins with one arm and sometimes with two arms.[49] When Rollins would rise to his knees and his feet he would lift Officer Parris off the ground for a moment.[50]

---

[40] R.R.III:36-37.
[41] R.R.III:37.
[42] State's Exhibit No. 1.
[43] State's Exhibit No. 1.
[44] State's Exhibit No. 1.
[45] State's Exhibit No. 1.
[46] State's Exhibit No. 1.
[47] State's Exhibit No. 1.
[48] R.R.III:109, 128.
[49] State's Exhibit No. 1.
[50] State's Exhibit No. 1.

Rollins testified that Officer Parris put him in a choke hold.[51] Officer Parris denied that he had a choke hold on Rollins.[52]

Officer Parris testified that Rollins was strong and he could barely hang on to Rollins.[53] Officer Parris testified that he just wanted Rollins facing away from him and on the ground so he could search him for weapons.[54] Officer Parris testified that he thought Rollins was under the influence of drugs and kept pushing himself back up because he was going to do "something bad."[55]

Officer Parris told Rollins to get on the ground or to lay down more than 15 times.[56] After being wrestled down, Rollins stood on his feet at least 4 times, not counting the times he stood on his knees.[57] After becoming exhausted by the struggle, Officer Parris tased Rollins in order to gain control over the situation.[58] When the other officers arrived, Rollins was handcuffed, put in a patrol car, and medics were called to make sure he was okay after the tasing.

The medics also examined Officer Parris.[59] Officer Parris was taken to the hospital for further examination.[60] Both of Officer Parris' knees had been

---

[51] R.R.III:129.
[52] R.R.III:53.
[53] R.R.III:41.
[54] R.R.III:40.
[55] R.R.III:41.
[56] State's Exhibit No. 1.
[57] State's Exhibit No. 1.
[58] R.R.III:42-44.
[59] R.R.III:48-49.

injured.[61]Officer Parris testified that as a result of the injuries he received from the struggling with Rollins, he underwent multiple surgeries on both knees, completed rehab, was out of work for 3 months, and has lost about 20 percent of the strength in his right leg.[62] In addition to his knee injuries, Officer Parris testified that Rollins head came back and hit his nose.[63] Parris testified that his caused him searing pain where everything flashed white for a second.[64]

After Rollins' children were removed from the scene, the car and scene were searched.[65] Officer Martinez testified that he collected multiple rocks cocaine on the ground near the front right passenger tire.[66] Officer Martinez testified that meth was also found at the scene.[67]

Rollins denied these were his drugs.[68] Rollins admitted to the jury that he possessed marijuana and codeine cough syrup while he drove with his 2 young children in the car.[69] Rollins admitted to the jury that he knew he would be arrested because he had several warrants outstanding for 5 years.[70] Rollins

---

[60] R.R.III:48-49.
[61] R.R.III:48-49.
[62] R.R.III:46-49.
[63] R.R.III:46; State's Exhibit No. 11 (picture of injury to Officer Parris' nose).
[64] R.R.III:46.
[65] R.R.III:78.
[66] R.R.III:80-81.
[67] R.R.III:80-81.
[68] R.R.III:135.
[69] R.R.III:121, 128.
[70] R.R.III:134.

admitted to the jury that if he was caught in possession of cocaine or meth that he would go to prison due to his past two convictions of delivery of a control substance.[71] Rollins told the jury that while he resisted, he did not intentionally or recklessly injure Officer Parris.[72]

By physically resisting arrest, Rollins consciously disregarded the substantial and unjustifiable risk that Officer Parris could be injured by his actions.[73] Based on the acts, words, and conduct of Rollins, the jurors could have rationally inferred that his acts caused Officer Parris' bodily injury.[74]

**IV.** ***Based upon Rollins testimony that he was in control when he resisted, the jurors could have rationally inferred that his recklessness caused Officer Parris' bodily injury.***

Rollins claims that he wasn't the cause of Officer Parris' knee injuries but that Officer Parris "suffered the injury because he chose to pick [Rollins] off the

---

[71] R.R.III:121, 138.

[72] R.R.III:126, 128-129, 142-43.

[73] *See Lofton v. State,* 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) ("Even if appellant had intended only to prevent his arrest, the force used by appellant against [the officer], at the very least, recklessly caused [the officer] to suffer a bodily injury."); *Gumpert v. State,* 48 S.W.3d 450, 454 (Tex. App.—Texarkana 2001, pet. ref'd) (concluding that the evidence established appellant disregarded "substantial nonjustifiable risk that his struggling, flailing about, and kicking could result in bodily injury").

[74] *Byars v. State*, 14-07-00824-CR, 2008 WL 4647391, at *2 (Tex. App.—Houston [14th Dist.] Oct. 21, 2008, no pet.).

ground."[75] To this end, Officer Parris testified,

> During the course of the struggle, I was trying to pick him up and put him back down on the ground. He would stand up, and I was on his back. Then I would try to lift him up and put him down. At one point during that, my knee actually popped and then made a crunch sound, so something actually tore inside of my knee.[76]

Officer Parris injured his knees in an effort to gain control over Rollins for safety reasons.[77] Because Rollins would not submit to the detention, would not lay down, and continued to fight and struggle, Officer Parris was forced to react. Officer Parris' knee injuries were directly caused by Rollins struggling.

Rollins claims his acts weren't voluntary.[78] Rollins claims that he was "being whipped around by Parris" and that if he accidently hit Parris as a result, it wasn't his voluntary action.[79] However, conduct is not involuntary "merely because an accused does not intend the result of his conduct."[80]

Here, Rollins admitted to the jury that he was in control when he didn't get out of the car at the officer's first request and that he was in control when he

---

[75] Rollins brief, p. 18,

[76] R.R.III:47.

[77] R.R.III:40-41, 47.

[78] A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. TEX. PENAL CODE § 6.01(a); Rolllins brief, p. 12.

[79] Rolllins brief, p. 12.

[80] *George v. State,* 681 S.W.2d 43, 45 (Tex. Crim. App. 1984); *Washington v. State*, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

continued to resist,[81]

This case is similar to *Byars v. State*.[82] In *Byars*, the officer was trying to stop a shoplifter.[83] The officer asked the appellant to stop, but the appellant responded with a curse word and began to run away.[84] When the officer caught up to the appellant, he grabbed appellant's jacket.[85] The appellant attempted to shrug out of the jacket, but got both himself and the officer entangled in it.[86] The two fell to the ground, where the appellant continued to resist the officer's efforts to place him in handcuffs by pulling his hand away.[87] The officer, unable to handcuff the appellant and concerned that the appellant might be reaching into his jacket for a weapon, reached for his pepper spray.[88] At that point, the officer noticed he had no feeling in his right shoulder.[89]

In *Byars*, this Court held that by physically resisting arrest, the appellant consciously disregarded the substantial and unjustifiable risk that the officer could be injured by his actions.[90] This Court upheld the jury's verdict because it was based on the acts, words, and conduct of the appellant which the jurors

---

[81] R.R.III:132.
[82] *Byars,* 2008 WL 4647391, at *1
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*; *see also Lofton,* 45 S.W.3d at 652; *Gumpert,* 48 S.W.3d at 454.

could have rationally inferred was the recklessness cause of the officer's bodily injury.[91]

Like *Byars*, the jurors could have rationally inferred that Rollins' acts and conduct caused Officer Parris' bodily injury.

## V.     *Conclusion: the evidence supports the jury's verdict of guilt.*

The record supports that Rollins assaulted Officer Parris. By physically resisting arrest, Rollins consciously disregarded the substantial and unjustifiable risk that Officer Parris could be injured by his actions.[92] Based on Rollins' acts and conduct, the jurors could have rationally inferred that his acts caused Officer Parris' bodily injury.[93] Rollins' first issue should be overruled.

---

**SECOND ISSUE**

**While the jury must unanimously agree about the occurrence of a single offense, it need not be unanimous about the specific manner or means of how that offense was committed.**

**How then was Rollins' right to a unanimous verdict violated if the jury was charged with alternate manner and means of a the single crime of assault on a public servant?**

---

**STATE'S RESPONSE**

---

[91] *See Lofton,* 45 S.W.3d at 652; *Gumpert,* 48 S.W.3d at 454.
[92] *See Lofton,* 45 S.W.3d at 652; *Gumpert,* 48 S.W.3d at 454.
[93] *Byars*, 2008 WL 4647391, at *2.

In his second issue, Rollins contends that a disjunctive jury charge with a general verdict form deprived him of a unanimous finding of guilt. However, the disjunctive phrases merely informed the jury of the different ways of committing the single offense of assault on a public servant with bodily injury. Because the phrases described different manner and means and not different criminal acts, the jury didn't have to agree on which alternative means Rollins used to assault Officer Rollins in order to reach a unanimous verdict.[94]

## I.    *Jury charge error standard of review*

Under *Almanza*, jury charge error requires reversal when the defendant has properly objected to the charge and the appellate court finds "some harm" to his rights.[95] But when the defendant fails to object or states that he has no objection to the charge, the appellate court will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant.[96] Reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual harm to an appellant.[97] "An egregious harm determination must be based on a finding of actual rather than theoretical harm."[98] Actual harm is established

---

[94] *See Kitchens v. State,* 823 S.W.2d 256 (Tex. Crim. App.1991); *see also Holford v. State*, 177 S.W.3d 454, 461-62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).
[95] *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005).
[96] *Id.*
[97] *Id.*
[98] *Cosio v. State,* 353 S.W.3d 766,777 (Tex Crim. App. 2011); *Arrington v. State*, 451 S.W.3d

when the erroneous jury instruction affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory."[99]

The appellate court reviews alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal.[100]

## II. Jury unanimity

Under the Texas Constitution and Code of Criminal Procedure, a Texas jury must reach a unanimous verdict.[101] The jury must agree that the defendant committed one specific crime.[102] The unanimity requirement ensures the jury agrees on the factual element underlying the charged offense, not that it merely agrees that a statute was violated.[103] That does not mean, however, that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act.[104]

While the jury must unanimously agree about the occurrence of a single

---

834, 840 (Tex. Crim. App. 2015).

[99] *Id.* (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g)); *Arrington*, 451 S.W.3d at 834.

[100] *Ngo*, 175 S.W.3d at 743-44.

[101] *See Landrian v. State*, 268 S.W.3d 532, 535-36 (Tex. Crim. App. 2008).

[102] *Id.*

[103] *Francis v. State,* 36 S.W.3d 121, 125 (Tex. Crim. App. 2000).

[104] *See Landrian*, 268 S.W.3d at 535-36.

criminal offense, it need not be unanimous about the specific manner or means of how that offense was committed.[105] When an appellant's indictment does not allege different offenses but only different ways of committing the same offense, the court properly furnishes the jury with a general verdict form.[106] Further, the unanimity requirement is not violated by instructing the jury on alternative legal theories of committing the same offense.[107] Alternative methods of committing the same offense are properly submitted to the jury in the disjunctive if the evidence is legally sufficient to support a finding of the offense under any of the theories submitted.[108]

## III.   *The jury reached a unanimous verdict because Rollins was charged with one offense which could've been committed several ways.*

The Court of Criminal Appeals has long held that,

> if but one transaction is involved, and the offense be one which may have been committed in any one of several ways, the pleader may charge in the indictment, in one count that such offense had been committed by doing this, and that, and the other, and

---

[105] *Young v. State,* 341 S.W.3d 417, 422 (Tex. Crim. App. 2011); *Ngo,* 175 S.W.3d at 745—46.

[106] *Aguirre v. State,* 732 S.W.2d 320, 326 (Tex. Crim. App.1982) (op. on reh'g).

[107] *Martinez v. State,* 129 S.W.3d 101, 103 (Tex. Crim. App. 2004).

[108] *Wert v. State,* 383 S.W.3d 747, 755 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (citing *Kitchens,* 823 S.W.2d at 256); *Smith v. State*, 436 S.W.3d 353, 377 (Tex. App.—Houston [14th Dist.] 2014), *reh'g overruled* (Aug. 12, 2014), *petition for discretionary review refused* (Oct. 15, 2014).

there will be no duplicity, and need be but a verdict of guilty....[109]

In *Aguirre,* the appellant was refused entrance to the house by his ex-wife, and he responded by firing a shotgun through the door, killing their daughter.[110] Aguirre was charged with murder in two alternative paragraphs, the first invoking Section 19.02(a)(1)—alleging that he intentionally or knowingly caused the girl's death—and the second invoking Section 19.02(a)(3)—alleging that he caused her death in the course of committing criminal mischief, i.e., shooting through the door.[111] Aguirre's conviction for felony murder was affirmed.[112] "Because appellant's indictment did not allege different offenses but only ... different ways of committing the same offense, the court properly furnished the jury with a general verdict form."[113] *Aguirre* is applicable here.

Similarly, Texas Court of Criminal Appeals ruled on a unanimity challenge that, where the charge was injury to a child, under Section 22.04 of the Texas Penal Code—but the defendant was accused alternatively of (1) striking the child, (2) failing to prevent another from injuring the child, and (3)

---

[109] *Aguirre,* 732 S.W.2d at 320 (quoting *McArthur v. State,* 132 Tex. Crim. 447, 105 S.W.2d 227, 230 (1937) (op. on reh'g)); *see also Barfield v. State*, 202 S.W.3d 912, 915-16 (Tex. App.—Texarkana 2006, pet. ref'd).
[110] *Aguirre,* 732 S.W.2d at 326.
[111] *Id.*
[112] *Id.*
[113] *Id.*

failing to provide proper medical care for the child—the alternative allegations were just different ways to commit the single offense.[114] In a concurring opinion, Judge Cochran provided a grammar lesson on sentence structure, and then encapsulated the rule:

> At a minimum, [the elements the jury must find, unanimously, beyond a reasonable doubt] are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); and the specific occasion (the date phrase within the indictment, but narrowed down to one specific incident regardless of the date alleged). Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense. They are not the gravamen of the offense nor elements on which the jury must be unanimous.[115]

Applying *Aguirre* and *Jefferson*, here the State indicted Rollins with only one offense of assault on a public servant with bodily injury. The jury charge read:

> Now, if you find from the evidence beyond a reasonable doubts that…Rollins did intentionally or knowingly or recklessly cause bodily injury to Officer Gregory Parris by striking the said Gregory Parris with

---

[114] *See Jefferson v. State,* 189 S.W.3d 305 (Tex. Crim. App. 2006) (The Court quoted approvingly an opinion of the Wisconsin Supreme Court, *State v. Johnson,* 243 Wis.2d 365, 627 N.W.2d 455, 459—60 (2001), in using a two-part analysis for such a unanimity challenge: (1) examine the statute to determine whether the Legislature intended to define separate offenses or merely alternative ways to commit one offense, and (2) if the offending behavior merely constitutes alternative ways to commit one offense, consider whether that formulation denies the defendant the due process of law as stated by *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)); *see also Barfield*, 202 S.W.3d at 912.
[115] *Jefferson,* 189 S.W.3d at 316 (Cochran, J., concurring); *see also Barfield*, 202 S.W.3d at 912.

his head and/or hand and/or pushing the said Gregory Parris with this hand and/or by kicking the said Gregory Parris with his foot and/or by twisting and/or pulling on the said Gregory Parris and/or by physically struggling with the said Gregory Parris and/or by physically resisting the said Gregory Parris, and the Defendant did then and there know that the said Gregory Parris was then and there a public servant, to-wit: a peace officer, and that the said Gregory Parris was then and there lawfully discharging an official duty, to-wit: attempting to detain and/or secure and/or arrest and/or control the said Robert Rollins then you will find the Defendant guilty of the offense of Assault of a Public Servant as charged in the indictment.[116]

Turning to the eighth-grade grammar test, the subject is "the defendant," the verb is "cause" and the direct object is "bodily injury."[117] The precise act or nature of conduct in this result-oriented offense is inconsequential.[118] "What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified."[119]

The gravamen of the offense of assault is the specific type of assault defined in Section 22.01.[120] Assault is defined in the Penal Code to include three separate and distinct assaultive crimes: assault by bodily injury, assault by

---

[116] C.R. 59.
[117] *Landrian*, 268 S.W.3d at 537.
[118] *Id.*
[119] *Id.*
[120] *Id.*

21

threat, and assault by contact.[121] A person commits assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a police officer.[122] Thus, the *actus reus* for "bodily injury" assault is "causing bodily injury."[123]

Yet another way of testing whether the State charged one assault on a public servant or several distinct and separate assault offenses, as Rollins claims, is to ask whether the State could have obtained more than one assault on a public servant conviction stemming from Rollins criminal conduct.[124] Would double jeopardy allow Rollins to be punished for causing bodily injury by head-butting Officer Parris during the struggle and causing pain to his face and also punished for causing bodily injury by injury to both Officer Parris' knees by continuing to struggle and get to his feet forcing the officer to take steps necessary to restrain him?[125] The answer is obvious: Rollins committed only one assault during a single incident and may be punished for only one assault.[126]

---

[121] *See* TEX. PENAL CODE § 22 .01(a)(1), (b)(1).
[122] *Id.*
[123] *Landrian*, 268 S.W.3d at 537.
[124] *Landrian*, 268 S.W.3d at 532
[125] *Landrian*, 268 S.W.3d at 532
[126] *Landrian*, 268 S.W.3d at 532; *see also State v. James,* 698 P.2d 1161, 1166 (Alaska 1985) ("When a defendant commits first degree assault by any of the three methods, the victim is fortunate to survive. Moreover, we find no evidence that the legislature intended by [the aggravated assault statute] to expose defendants to multiple punishments. We may therefore assume that a single punishment was envisioned for violation of the statute.").

No unanimity error existed in the charge.[127] Rollins second issue should be overruled.

---

**THIRD ISSUE**

**When a trial court includes an instruction on a presumed fact in the jury charge, the Texas legislature requires the trial court to include a Section 2.05(a)(2) instruction.**

**How was Rollins harmed by the omission of a Section 2.05(a)(2) instruction when the evidence of Rollins' understanding that Officer Parris was an on-duty police officer was not disputed at trial?**

---

**STATE'S RESPONSE**

In his third issue, Rollins correctly points out that the jury charged didn't include a Section 2.05(a)(2) instruction following the Section 22.01(d) presumption instruction regarding peace officers. However, the error wasn't harmful because the record shows how Rollins understood Officer Parris was an on-duty police officer and the charge contained other similar instructive language for the jury to follow.

### I. *Standard of review*

In reviewing jury charge error, the usual *Almanza* standard which depends

---

[127] *Ngo*, 175 S.W.3d at 738.

upon whether appellant preserved the error is applied.[128] Here, Rollins did not make any objections to the jury charge.[129] Yet when inquiring whether a mandatory presumption caused harm where the error *was* preserved, "the relevant inquiry is 'whether the evidence was so dispositive of [the element at issue] that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.' "[130]

## II. *Presumption instructions*

When a trial court includes an instruction on a presumed fact in the jury charge like required in Section 22.01(d), the Texas legislature requires the trial court to include a Section 2.05(a)(2) instruction.[131] Without a Section 2.05(a)(2) instruction, it is possible that the presumed fact instruction would contain a mandatory presumption. Mandatory presumptions are unconstitutional.[132] Here, the jury charge included the presumption that "knowledge that the assaulted person was a public servant is presumed if the person was wearing a distinctive

---

[128] *Almanza,* 686 S.W.2d at 157; *Ramos v. State*, 991 S.W.2d 430, 434 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

[129] R.R.III:145.

[130] *Alexander v. State,* 757 S.W.2d 95, 100 (Tex. App. —Dallas 1988, pet. ref'd) (quoting *Rose v. Clark,* 478 U.S. 570, 583, 106 S.Ct. 3101, 3109, 92 L.Ed.2d 460 (1986)); *Jimenez v. State*, 419 S.W.3d 706, 718 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (emphasis added).

[131] TEX. PENAL CODE §§ 2.05, 22.01(d).

[132] *Webber v. State,* 29 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist] 2000, pet. ref'd); *Brewer v. State*, 08-00-00424-CR, 2002 WL 266816, at *5 (Tex. App.—El Paso Feb. 26, 2002, pet. ref'd).

uniform or badge that indicated the person's employment as a public servant."[133]

### III. The evidence was unchallenged that Rollins understood Officer Parris was an on-duty police officer.

Officer Parris testified that he was in a standard uniform, in a marked patrol unit, and that he made a traffic stop with his overhead flashing lights.[134] Rollins testified that he knew he was going to be detained and was going to jail for outstanding warrants so he gave Officer Parris the marijuana right when he approach the car.[135]

Even if the error would've been preserved at trial, the evidence meets the lower threshold harm analysis.[136] The evidence was so undeniable that Rollins understood Officer Parris was acting as an on-duty police officer that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption,[137]

Additionally, the guilt-innocence charge instructs the jury that the prosecution has the duty of proving each and every element of the offense charged beyond a reasonable doubt.[138] Failure to do so requires acquittal.[139]

---

[133] *See* TEX. PEN. CODE § 22.01(d).
[134] R.R.III:24-25.
[135] R.R.III:121-122.
[136] *Ngo*, 175 S.W.3d at 743-44.
[137] *See Alexander,* 757 S.W.2d at 100; *Jimenez,* 419 S.W.3d at 718.
[138] C.R. 59-60.

Furthermore, the application paragraph includes the instruction that the jury must find that Rollins "did then and there know that said Gregory Parris was then and there a public servant, to-wit: a peace office, and that said Gregory Parris was then and there lawfully discharging an office duty...."[140] Such instructions informed that jury that they still had to find every element beyond a reasonable doubt.[141]

## IV. *Conclusion: there was no harm because Rollins acknowledged that Officer Parris was an on-duty police officer.*

Rollins was not harmed by the omission of a Section 2.05(a)(2) instruction because the evidence of Rollins understanding that Officer Parris was an on-duty police officer was not disputed at trial. The evidence showed that Rollins clearly recognized Officer Parris as an on-duty police officer. Rollins third issue should be overruled.

---

[139] C.R. 59-60.

[140] C.R. 59.

[141] *See Jimenez*, 419 S.W.3d at 718; *see also Garrett v. State*, 159 S.W.3d 717, 721 (Tex. App.—Fort Worth 2005), *aff'd,* 220 S.W.3d 926 (Tex. Crim. App. 2007).

---

**FOURTH ISSUE**

**Rollins maintains that he's entitled to a new trial under Texas Rule of Appellate Procedure 34.6(f)(4) because the trial court reporter thought a key exhibit was lost.**

**How is Rule 36.4(f) applicable when there is no lost evidence?**

---

**STATE'S RESPONSE**

In Rollins' fourth issue, he claims that he is entitled to a new trial under Texas Rule of Appellate Procedure 34.6(f)(4) because the trial court reporter thought a key exhibit was lost. Although the court reporter didn't know where the exhibit was located, it never left the court reporter's exhibit closet, and when it was located, it was filed accordingly. Therefore, Rollins is not entitled to a new trial.

### I.    *Rule of Appellate Procedure 34.6*

Rule of Appellate Procedure 34.6 governs the presentation of the reporter's record on appeal, and it provides that that record "consists of the court reporter's transcription of so much of the proceedings, and any of the exhibits, that the parties to the appeal designate."[142] The purpose of Rule 34.6 ensures that

---

[142] TEX. R. APP. P. 34.6(a)(1).

27

the record on appeal accurately reflects all of the evidence that was seen by, used by, or considered by the trial judge at the time he made a ruling.[143]

If the record as originally designated by the parties does not fully reflect the evidence considered by the factfinder, then the trial judge, the court of appeals, or any of the parties may direct the court reporter to supplement the appellate record with the missing items.[144] If the parties have a dispute over what items are missing from the appellate record, or they dispute the accuracy or completeness of those items, the trial court will resolve that dispute.[145]

Rule 34.6(f) entitles an appellant to a new trial under certain conditions, one of which is that "without appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed."[15] Rule 34.6(f) does not apply here because there is nothing missing from the Reporter's Record.[146] A court reporter's repeated failure to file the record does not, by itself, provide a sufficient basis for concluding that the court

---

[143] The Texas Supreme Court has stated that "appellate courts must construe [the rules governing correction of the appellate record] liberally so their decisions 'turn on substance rather than procedural technicality.' " *Gallagher v. Fire Ins. Exchange,* 950 S.W.2d 370, 371 (Tex. 1997) (per curiam) (quoting *Crown Life Ins. Co. v. Estate of Gonzalez,* 820 S.W.2d 121, 121 (Tex. 1991) (per curiam)); *see also Blondett v. State,* 921 S.W.2d 469, 477 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd) ("The purpose of [predecessor to Rule 34.6(e) ] is to create an accurate record on appeal."); *see also Amador v. State*, 221 S.W.3d 666, 677, fn 48 (Tex. Crim. App. 2007).
[144] *Amador*, 221 S.W.3d at 677.
[145]*Id.*; *Rowell v. State*, 66 S.W.3d 279, 282 (Tex. Crim. App. 2001)
[146] *See Lucio v. State*, 351 S.W.3d 878, 891-92 (Tex. Crim. App. 2011).

reporter's notes and records have been "lost or destroyed," so as to justify granting a new trial.[147] The Rules of Appellate Procedure also give appellate courts the power to take actions designed to ensure the preparation and filing of the record, including the appointment of a substitute court reporter to prepare and file the record from the original court reporter's notes.[148] A court reporter's notes and records, or portions thereof, can be considered "lost" only if the missing portions of the appellate record are irretrievable.[149]

## II. State's Exhibit 1 was never lost—it was always in the exhibit closet. The court reporter just couldn't find it.

State's Exhibit 1 was admitted at trial. At the conclusion of trial, the 405th District Court court reporter, Delicia Struss, took possession of all the exhibits and placed them into her exhibit closet.[150] Her exhibit closet was located in the 405th District Court court reporter's office.[151] When Struss filed the reporter's record in this case, she was unable to locate State's Exhibit 1. Several months later, the new 405th District Court court reporter, Cylena Korkmas located State's Exhibit 1 in the 405th District Court court reporter's exhibit closet.[152] It

---

[147] *Johnson v. State*, 151 S.W.3d 193, 196 (Tex. Crim. App. 2004).
[148] *Id.*
[149] *Id.*
[150] *See* Verification hearing Exhibit 1-V and 2-V.
[151] *See* Verification hearing Exhibit 1-V and 2-V.
[152] *See* Verification hearing Exhibit 1-V and 2-V.

was the same closet that Struss used when she was the 405th District Court court reporter.[153]

Upon Rollins motion, the trial court held a verification hearing to determine if State's Exhibit 1 was the same exhibit that was entered into at trial. After considering affidavits by Rollins' trial counsel, Rollins, Officer Parris, the prosecutor, and both court reporters, the trial court verified that the State's Exhibit 1 was the same exhibit that was admitted at trial.[154] Rollins' affidavit swearing that the State's Exhibit 1 wasn't authentic was the only contradicting evidence before the trial court. Moreover, Rollins affidavit describing State's Exhibit 1 didn't match the description he gave of the struggle in his trial testimony.

Rollins' claim that he remembers the struggle differently does not mean that State's Exhibit 1 "lost or destroyed" for purposes of Rule 34.6(f).[155] There is nothing missing from the reporter's record. The trial court didn't err by verifying State's Exhibit 1.[156]

---

[153] R.R.VH:10.

[154] R.R.VH:10-11.

[155] *See Jaynes v. State*, 216 S.W.3d 839, 844 (Tex. App.—Corpus Christi 2006, no pet.).

[156] *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also Jaynes*, 216 S.W.3d at 839 (When the reviewing court gives almost total deference to a trial court's resolution of the historical facts, it may conclude that the trial court correctly ruled that the text of the reporter's record of the trial accurately discloses what occurred in the trial court. Appellant's first issue is overruled.).

Rollins fourth issue should be overruled.

<div style="border: 2px solid black; padding: 20px;">

## FIFTH, SEVENTH, AND EIGHTH ISSUES

**Rollins wasn't entitled to the defensive jury charge issues he complains about. But even so, trial counsel was under no duty to raise every defense available, so long there was an objectively reasonable defense presented.**

**Rollins' trial counsel had a clear trial strategy: to negate the *mens rea* element of assault.**

**How was trial counsel ineffective when these defensive issues would've conflicted with the clear laid out trial strategy and Rollins' own testimony?**

</div>

## STATE'S RESPONSE

In his fifth, sixth, seventh, and eighth issues, Rollins contends he was denied his right to effective assistance of counsel. Because issues five, seven, and eight are jury charge issues, they will be consolidated. Specifically, Rollins contends his trial counsel was ineffective because she didn't include defensive items in the jury charge. Rollins claims he was entitled to a self-defense instruction, a voluntariness instruction, and a lesser-included offense of resisting arrest. First of all, Rollins wouldn't have been entitled to these defensive jury charge issues. At trial, Rollins repeatedly testified that he had no intent to harm the officer. He didn't know his actions would cause harm. In order to remain

31

credible before the jury, it would've been reasonable for trial counsel to refrain from including defensive items in the charge that were contrary to Rollins overall testimony---that he had no intent and wasn't reckless.

Counsel is under no duty to raise every defense available, so long as counsel presents a defense that is objectively reasonable or strategically sound. In some cases, it may be a more effective strategy to focus on a relatively narrow defense, rather than to use a "shotgun" approach by arguing every defense available. That was the choice made in Rollins case. From the beginning of opening statements to the end of closing arguments, Rollins' trial counsel had a clear trial strategy: to negate the *mens rea* element. Rollins' trial strategy was objectively reasonable and strategically sound. Rollins receive effective assistance at his trial and these issues should be overruled.

## I.     *Ineffective assistance of counsel*

The constitutional right to counsel in a criminal prosecution exists to protect the fundamental right to a fair trial.[157] In this context, "a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding."[158] "The benchmark for judging any claim of ineffectiveness must be whether counsel's

---

[157] *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

[158] *Id.* at 685, 104 S.Ct. at 2063.

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[159] "This right does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight."[160]

Claims that a defendant received ineffective assistance of counsel are governed by a two-part test: (1) whether the attorney's performance was deficient, i.e., did counsel make errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and if so, (2) whether that deficient performance prejudiced the party's defense.[161] "An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel."[162] The adequacy of attorney performance is judged against what is reasonable considering prevailing professional norms.[163]

There is a strong presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial

---

[159] *Id.* at 686, 104 S.Ct. at 2064.

[160] *Robertson v. State,* 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

[161] *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Lopez v. State,* 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Bailey v. State*, 01-12-00200-CR, 2015 WL 4497773, at *8-9 (Tex. App.— Houston [1st Dist.] July 23, 2015), *petition for discretionary review filed* (Sept. 22, 2015).

[162] *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Okonkwo v. State,* 398 S.W.3d 689, 693 (Tex. Crim. App. 2013) (appellate review focuses on the objective reasonableness of counsel's actual conduct "in light of the entire record").

[163] *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

strategy.[164] When such direct evidence is not available, an appellate court "will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined."[165] In the face of this presumption, a criminal defendant has the burden of showing by a preponderance of the evidence that his attorney failed to provide constitutionally adequate representation.[166] To overcome this presumption, the defendant must come forward with evidence illustrating why trial counsel did what he did.[167] Generally, however, a reviewing court, in considering a claim of ineffective assistance of counsel, should be highly deferential to trial counsel and avoid the deleterious effects of hindsight.[168]

Limitations of the record often render a direct appeal inadequate to raise a claim of ineffective assistance of counsel.[169] "An ineffective-assistance claim must be firmly founded in the record and the record must affirmatively demonstrate the meritorious nature of the claim."[170]

---

[164] *Id.* at 689, 104 S.Ct. at 2065; *Nava v. State,* 415 S.W.3d 289, 307—08 (Tex. Crim. App. 2013).

[165] *Lopez,* 343 S.W.3d 143; *Hernandez v. State*, 01-12-01080-CR, 2014 WL 1101587, at *2-3 (Tex. App.—Houston [1st Dist.] Mar. 20, 2014, no pet.).

[166] *Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002); *Bailey*, 01-12-00200-CR, 2015 WL 4497773, at *8-9.

[167] *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

[168] *Thompson,* 9 S.W.3d at 813 (citing *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984)); *Copeland v. State*, 14-00-00386-CR, 2001 WL 930883, at *1 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, no pet.).

[169] *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

[170] *Menefield v. State,* 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *see also Thompson,* 9 S.W.3d at 813.

## II.     *Even if Rollins' trial counsel had requested a self-defense instruction in the jury charge, Rollins wasn't entitled to it.*

Rollins maintains his trial counsel was ineffective for not requesting a self-defense instruction in the jury charge. As a threshold matter, to establish a claim that a defense counsel's performance was deficient for failing to request an instruction, the appellant must show that he was entitled to the instruction.[171]

The Texas Penal Code defines self-defense as a police officer as:

> (c) The use of force to resist an arrest or search is justified:
>
> (1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and
>
> (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.[172]

Self-defense is a justification for one's actions, which necessarily requires admission that the conduct occurred.[173] Self-defense is inconsistent with a denial

---

[171] *Shanklin v. State,* 190 S.W.3d 154, 159 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) (citing *Fuentes v. State,* 991 S.W.2d 267, 272 (Tex. Crim. App. 1999)); *Williams v. State*, 01-07-00632-CR, 2009 WL 350608, at *4 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (regarding instruction on a lesser-included offense.).

[172] TEX. PEN. CODE § 9.31.

[173] *See Young v. State*, 991 S.W.2d 835, 838 (Tex.Crim.App.1999) (discussing defense of necessity as justification); *MacDonald v. State,* 761 S.W.2d 56, 60 (Tex. App.—Houston

of the conduct.[174] To raise the issue of self-defense, appellant must admit the committed offense and then offer self-defense as justification.[175]

When the defensive evidence merely negates the necessary culpable mental state, it will not suffice to entitle the defendant to a self-defense instruction.[176] A self-defense instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.[177] For example, in *Young v. State,* the Court of Criminal Appeals observed that "[i]n order to raise necessity, a defendant admits violating the statute under which he is charged and then offers necessity as a justification which weighs against imposing a criminal punishment for the act or acts which violated the statute."[178] The Court of Criminal Appeals held that Young himself was not entitled to a necessity instruction because he merely "argued he did not commit the offense because he did not have the requisite intent and he did not perform the actions the State alleged."[32] Similarly, in *Ex parte Nailor,* the Court of Criminal Appeals held that

[14th Dist.] 1988, pet. ref'd).

[174] *Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Crim.App.1986); *MacDonald,* 761 S.W.2d at 60.

[175] *See Young,* 991 S.W.2d at 839 (finding defendant was not entitled to instruction on defense of necessity because he argued he did not commit offense).

[176] *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

[177] *Id*.

[178] *Young*, 991 S.W.2d at 839.

the defendant was not entitled to a jury instruction on self-defense because his defensive evidence did not show confession and avoidance, but only a lack of the required culpable act and *mens rea.*[179]

### III. Rollins' trial counsel wasn't ineffective for not requesting a self-defense instruction in the jury charge because it wasn't supported by the evidence.

Rollins claims the evidence entitled him to a self-defense instruction. Rollins maintains that the video shows evidence of the use of excessive force. Yet at trial, Rollins didn't accuse Officer Parris of excessive force in his testimony nor was there any other evidence of excessive force.

The entire struggle lasts for approximately 1 minute and 15 seconds.[180] Contrary to Rollins' interpretation, the record is silent and does not indicate that Officer Parris used greater force than necessary. Officer Parris testified that he believed his life could've been at risk because he didn't know if Rollins was reaching for a weapon when he was in the car.[181] Officer Parris testified that he

---

[179] *Shaw*, 243 S.W.3d at 659; *Ex parte Nailor,* 149 S.W.3d 125, 133 (Tex. Crim. App. 2004) (defendant who contended at trial that victim was injury by accident had not confessed to elements of offense and could not raise self-defense); *see Ford v. State,* 112 S.W.3d 788, 794 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (explaining that assertion of defense is inconsistent with denial of charged conduct); *Velez v. State*, 01-14-00544-CR, 2015 WL 3522835, at *4 (Tex. App.—Houston [1st Dist.] June 4, 2015), *petition for discretionary review filed* (Oct. 2, 2015).

[180] *See* State's Exhibit 1: Video 1965, 18:41:30-18:42:45; *see also* Rollins brief, p. 3.

[181] R.R.III:37-40.

restrained his use of force when he saw the children in the back seat of the car in spite of the danger he felt he was in.[182]

What the video shows is how Rollins repeatedly raised himself to his feet and repeatedly told Officer Parris "my kids are right there."[183] Rollins testified that he never intentionally meant to hurt Officer Parris.[184] Rollins told the jury that all he was thinking about was his kids.[185]

In his testimony, Rollins repeatedly denied that he intentionally meant to injure Officer Parris.[186] If the jury believed Rollins' version of the incident, there was no issue of self-defense to decide.[187] Because Rollins did not admit the offense and then offer justification for it, the issue of self-defense was not raised, and the trial court would not have admitted.[188]

---

[182] R.R.III:38-39.

[183] State's Exhibit No. 1.

[184] R.R.III:126, 128-129.

[185] R.R.III:127.

[186] R.R.III:126, 128-129.

[187] *See Fregia v. State*, 01-13-00312-CR, 2014 WL 527535, at *7 (Tex. App.—Houston [1st Dist.] pet. ref'd, 2014) (Appellant's counsel could have believed that requesting the defensive instructions would have undercut appellant's claim that he did not act forcefully, shifted the focus of the defense, and confused the jury. Counsel may have also reasonably believed that the instructions may have seemed inconsistent with appellant's testimony, thereby weakening his credibility.).

[188] *See Young,* 991 S.W.2d at 839; *see also Anderson v. State*, 11 S.W.3d 369, 371-72 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

***IV. Even if we presume that he was entitled to the self-defense instructions, Rollins has not shown that he received ineffective assistance of counsel at trial.***

Rollins filed a motion for new trial solely alleging his trial counsel was ineffective for not requesting a self-defense instruction in the charge. Attached to his motion was an affidavit by trial counsel.[189] In the affidavit, Rollins' trial counsel admitted that not requesting a self-defense instruction was not part of a trial strategy but an oversight.[190]

The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was not contradicted.[191] The admission of evidence is a matter within the discretion of the trial court. The trial court has full discretion to choose whether or not to believe statements made in such an affidavit.[192]

Here, at the hearing on Rollins' motion for new trial, the trial court considered Rollins' trial counsel's affidavit.[193] The trial court denied the motion

---

[189] C.R. Supp. 3-16.

[190] C.R. Supp. 11-14 (Affidavit of Haley Sloss, September 29, 2014).

[191] *See Montgomery v. State,* 810 S.W.2d 372, 378—79 (Tex. Crim. App. 1990) (opinion on reh'g)

[192] *Ex parte Thompson*, 13-06-290-CR, 2007 WL 2459978, at *7 (Tex. App.—Corpus Christi Aug. 30, 2007, no pet.).

[193] *See Montgomery,* 810 S.W.2d at 372 (The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was not contradicted. The admission of evidence is a matter within

for new trial without findings of fact and conclusions of law.[194] However, the trial court judged the credibility of the affidavit and whether it was a true reflection of Rollins' trial strategy or a product of reflection and hindsight.[195] The record supports that the affidavit was a product of hindsight because the trial strategy that was clearly evident thorough the course of the trial.[196]

The trial court heard Rollins' trial counsel tell the jury in opening statements that "At no time during the struggle does Mr. Rollins strike Officer Parris, does he head butt Officer Parris, or kick Officer Parris. He is actually never even facing Officer Parris."[197] Again in closing argument,

> There was a struggle. We saw that on the video. They were clearly struggling. Mr. Rollins at no time intentionally hurt the officer. He didn't know that his

---

the discretion of the trial court.); *Ex parte Thompson*, 13-06-290-CR, 2007 WL 2459978, at *7 (The trial court has full discretion to choose whether or not to believe statements made in such an affidavit.).

[194] This Court noted that trial courts are in the best position to "evaluate the credibility" of witnesses and to resolve conflicts in evidence. A trial court may choose to believe or disbelieve all or any part of the witnesses' testimony. When, as here, a trial court makes no findings of fact regarding the denial of a motion for new trial, the reviewing court should "impute implicit factual findings that support the trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported in the record." *Glenn v. State*, 01-13-00640-CR, 2015 WL 831995, at *2 (Tex. App.—Houston [1st Dist.] pet. ref'd 2015) citing *Johnson v. State,* 169 S.W.3d 223, 239 (Tex. Crim. App. 2005); *Escobar v. State,* 227 S.W.3d 123, 127 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd).

[195] *Thompson,* 9 S.W.3d at 813; *Copeland*, 2001 WL 930883, at *1 (Generally, however, a reviewing court, in considering a claim of ineffective assistance of counsel, should be highly deferential to trial counsel and avoid the deleterious effects of hindsight.).

[196] *See Robertson,* 187 S.W.3d at 483 ("This right does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight.")

[197] R.R.III:12.

> actions would cause the injuries to the officer's knees. He had no knowledge of that.
>
> And as the State told you, we can look -- they look at reckless as well. Well, the recklessness comes from the actor's standpoint. The actor in this case is Mr. Rollins. He testified he had no idea that his actions would cause the injuries to the officer. He never wanted to injure the officer. His only concern was his children, and his children getting to their mother, because he knew he was going to jail.[198]

Despite her post trial affidavit, trial counsel could've believed during trial that requesting a self-defense instruction would've undercut Rollins' claim that he didn't act intentionally or forcefully, shifted the focus of the defense, and confused the jury.[199] Trial counsel may have also reasonably believed that the instructions may have seemed inconsistent with Rollins' testimony, thereby weakening his credibility.[200]

Because Rollins wasn't entitled to a self-defense instruction in the charge, the first prong of *Strickland* cannot be met.

---

[198] R.R.III:160.
[199] *See Fregia*, 2014 WL 527535, at *7.
[200] *See id.*

*V.* *Rollins wasn't entitled to a voluntariness instruction because he testified that he was in control of his actions.*

Rollins also claims that his trial counsel was ineffective for not requesting a voluntary instruction in the jury charge. However, even if trial counsel had requested a voluntary charge, the trial court would've been correct to refuse it. The evidence does not support its inclusion.

A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.[201] Voluntariness, within the meaning of section 6.01(a), refers only to one's physical bodily movements.[202] The Court of Criminal Appeals has viewed section 6.01(a) as imposing an actus element of criminal liability onto every offense:

> [a]n additional significance of § 6.01 in the instant case is that it superimposes an "engage in conduct" requirement onto *every* offense; this, however, is relevant to the voluntariness of acts or omissions, and not the subject of culpable mental state.[203]

Notably, conduct is not rendered involuntary merely because the defendant does not intend the result of his conduct.[204]

---

[201] TEX. PEN. CODE § 6.01(a).
[202] *Alford v. State,* 866 S.W.2d 619, 624 (Tex. Crim. App. 1993).
[203] *Alford*, 866 S.W.2d at 619.
[204] *George,* 681 S.W.2d at 43; *Rodgers v. State*, 01-03-00850-CR, 2004 WL 2363830, at *2 (Tex. App.—Houston [1st Dist.] Oct. 21, 2004, no pet.); *Washington*, 417 S.W.3d at 713 (Cases with gun shootings claimed to be accidental but found voluntary.).

## VI. *Rollins admitted to the jury that he was in control.*

Rollins admitted to the jury that he was in control when he didn't get out of the car at the officer's first request and that he was in control when he continued to resist,[205] In this case, there was no evidence that Rollins did not voluntarily engage in the conduct which injured the complainant; he merely said that he did not intend the resulting injuries.[206] To the contrary, Rollins admitted to the jury that he was in control. The trial court was correct in overruling his objection to the absence of a charge on "the law of accident."[207]

The facts are analogous to *Pena v. State*.[208] In *Pena*, the appellant alleged that the trial court erred in not instructing the jury on the defense of accident and voluntary conduct.[209] The appellant pointed to the record where the officers and the appellant fell on the bed and hit a window in appellant's bedroom during their struggle.[210] He argues that the officer's nose injury could have occurred by the fall and not by being struck in the face with a belt.[211] The court held that even assuming the appellant is correct, that the officer's nose was injured in the

---

[205] R.R.III:132.

[206] *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) (In this case, there was no evidence that the appellant did not voluntarily engage in the conduct which injured the complainant; he merely said that he did not intend the resulting injuries. The trial court correctly overruled the objection to the absence of a charge on "the law of accident.").

[207] *Williams*, 630 S.W.2d at 644.

[208] *Pena v. State*, 725 S.W.2d 505, 506-07 (Tex. App.—Corpus Christi 1987, no pet.).

[209] *Pena*, 725 S.W.2d at 505.

[210] *Id.*

[211] *Id.*

fall and contact with the window, the appellant would not be entitled to a charge on "accident" or "voluntary conduct" because there is no evidence that the appellant did not voluntarily engage in the conduct which injured the officer.[212]

Like *Pena*, Rollins engaged in the struggle. The video shows clearly how Rollins engaged in the struggle. Rollins purposefully continues to disobey the officer's commands. Because of the evidence that Rollins has extensive experience around law enforcement, a reasonable inference may be made that Rollins understood the situation that he created. There was no evidence that Rollins didn't voluntary engage in the struggle which led to the officer's injuries.

Because Rollins wasn't entitled to a voluntary instruction in the charge, the first prong of *Strickland* cannot be met.

## VII. Rollins hasn't shown that his trial counsel was ineffective for not requesting a lesser-included offense in the charge.

Rollins also alleges his trial counsel was ineffective for not requesting a lesser-included offense of resisting arrest in the jury charge. Again, to establish a claim that his trial counsel's performance was deficient for failing to request an instruction, Rollins must show that he was entitled to the instruction.[213] But

---

[212] *Id*. (quoting *Alvarado v. State,* 704 S.W.2d 36 (Tex. Crim. App. 1985)).
[213] *Shanklin,* 190 S.W.3d at 159; *Williams*, 2009 WL 350608, at *4.

because the record is silent regarding counsel's trial strategy at the charge conference, the appellate court must presume that there was a plausible reason for not requesting an instruction on the lesser-included offense of resisting arrest and that he acted within the range of reasonable professional assistance.[214] Several courts, including this one, have held that the failure to request an instruction on a lesser-included offense can be a valid and reasonable trial strategy.[215] The "all or nothing" strategy of forcing the jury to choose between the greater offense and acquittal without the alternative of a lesser-included offense, is risky but sometimes successful.[216] Because Appellant has failed to rebut the strong presumption that counsel's decision not to request the instruction was sound trial strategy, he has not carried his burden under *Strickland.*[217]

## VIII. Rollins wasn't entitled to the lesser-included offense of resisting because there is no evidence that he's guilty of only resisting.

---

[214] Rollins' Motion for New Trial's ineffective assistance of counsel claim only alleged that counsel should've requested a self-defense instruction in the jury charge; *see Nava,* 415 S.W.3d at 307—08; *Lopez,* 343 S.W.3d 143; *Hernandez,* 2014 WL 1101587, at *2-3.

[215] *See e.g., Williams v. State,* No. 08-02-00310-CR, 2004 WL 309265 at *6 (Tex. App.-El Paso, Feb. 19, 2004, pet. ref'd); *Wood v. State,* 4 S.W.3d 85, 87 (Tex. App.-Fort Worth 1999, pet. ref'd); *Davis v. State,* 930 S.W.2d 765, 768 (Tex. App.-Houston [1st Dist.] 1996, pet. ref'd); *Lynn v. State,* 860 S.W.2d 599, 605 (Tex. App.-Corpus Christi 1993, pet. ref'd).

[216] *See Lynn,* 860 S.W.2d at 603; *Vives v. State*, 01-01-00296-CR, 2002 WL 31388695, at *3 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, no pet.).

[217] *See Williams*, 2009 WL 350608, at *4; *Jackson v. State*, 08-05-00135-CR, 2006 WL 1711098, at *4 (Tex. App.—El Paso June 22, 2006, no pet.).

A defendant is entitled to an instruction on a lesser included offense when the proof for the offense charged includes the proof necessary to establish the lesser included offense, and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense.[218] The evidence must establish that if a defendant is guilty, he is guilty only of the lesser included offense.[219]

The Texas Penal Code defines resisting arrest as:

> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.[220]

Initially, Rollins denied repeatedly that he resisted arrest. But on cross-examination and on re-direct examination, Rollins admitted that resisted when "he got me on the ground the first time."[221]

Rollins has been to prison and has experience with law enforcement. Rollins testified that he expected to be arrested. Therefore, Rollins understood what he did when he refused to lie flat and allow the officer to cuff him. Rollins

---

[218] *Bignall v. State,* 887 S.W.2d 21, 23 (Tex. Crim. App. 1994) (citing *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993)); *Shanklin*, 190 S.W.3d at 154.
[219] *See Wesbrook,* 29 S.W.3d at 113; *Arevalo v. State,* 943 S.W.2d 887, 889–90 (Tex. Crim. App. 1997); *Lofton*, 45 S.W.3d at 649.
[220] TEX. PEN. CODE § 38.03.
[221] R.R.III:136, 142.

knowingly raised himself to his feet or to his knees repeatedly even though Officer Parris repeatedly asked him to get down. Because Rollins continued to engage in a struggle with Officer Parris and that struggle led to the officer's injuries, Rollins was not guilty only of resisting arrest.

## IX. *The defensive theory was inconsistent with requesting the lesser-included resisting arrest.*

The defense's theory of the case was that Rollins lacked any culpable mental state whatsoever. Before the jury, defense counsel argued repeatedly that Rollins didn't intent to injure the officer; he was just concerned for his children; he had turned his life around; and he admitted to what he had done wrong – possession of the marijuana. Trial counsel chose not to request lesser-included offenses upon which the jury could find appellant guilty and which would've conflicted with Rollins testimony. Such a decision, although risky, is sometimes successful. Such a tactic was not so unreasonable under the facts of the case that it denied Rollins the effective assistance of counsel.[222]

Even if the evidence was sufficient to raise these defenses, which it wasn't, merely being entitled to a jury instruction but not requesting it is not the

---

[222] *See Ex Parte White,* 160 S.W.3d 46, 55 (Tex. Crim. App. 2004); (requiring a jury to opt between murder and acquittal, although risky, is sometimes successful); *Lynn*, 860 S.W.2d at 599; *Shanklin*, 190 S.W.3d 160-61 (Tex. App.—Houston [1st Dist.] 2005, pet. granted).

test for ineffective assistance of counsel.[223] Instead, the test is whether it was objectively unreasonable for counsel not to ask for it.[224] Counsel is under no duty to raise every defense available, so long as counsel presents a defense that is objectively reasonable or strategically sound. In some cases, it may be a more effective strategy to focus on a relatively narrow defense, rather than to use a "shotgun" approach by arguing every defense available.[225]

Rollins' choice to focus on culpable mental state rather than self-defense, voluntariness, or a lesser-included charge cannot be said to fall below an unreasonable standard, especially where the evidence to support the other theories was not strong, and where he had explained to the jury in voir dire and closing argument that his case was centered on the State's failure to show intent. Given this approach, it could have been more effective to focus the jury's attention on lack of mental state than to risk confusing the jury with instructions on other issues that were not well supported by the evidence. Under the

---

[223]*See Dannhaus v. State*, 928 S.W.2d 81, 86 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).
[224] *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063.
[225] *Dannhaus*, 928 S.W.2d at 85-87.

circumstances, a strategy of "damage control" was not objectively unreasonable.[226]

### X.   Even if….the outcome still wouldn't changed.

Even if a review finds trial counsel erred not to request a self-defense instruction, a voluntary instruction, and a lesser-included offense of resisting arrest, the outcome still wouldn't have changed. The jury saw Rollins engage in the struggle with Officer Parris on the video. The jury saw on the video how Rollins continued to refuse to obey Officer Parris' request to get out of the car and to lie down on the ground. The jury saw on the video how Rollins was bigger that Officer Parris. The jury saw on the video how Officer Parris initially waited for Rollins to comply. The jury heard the testimony from Officer Parris about his knee injuries and numerous surgeries. The jury heard the testimony from Rollins and how he knew he was resisting but he didn't mean to hurt Officer Parris. The jury saw the melee and the resulting injuries. The verdict would've been the same.

Rollins hasn't proved either prong of Strickland for issues five, seven, and eight. These issues should be overruled.

---

[226] *See Hathorn v. State,* 848 S.W.2d 101, 118 (Tex.Crim.App.1992) (trying to get jury to find defendant guilty of lesser offense can be explained as a sound trial tactic), *cert. denied,* 509 U.S. 932, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993); *Dannhaus*, 928 S.W.2d at 81.

**SIXTH ISSUE**

**Defense counsel is not ineffective for failing to object to admissible evidence.**

**How was Rollins' trial counsel ineffective for not objecting at trial when the drugs found on the scene were properly admitted to show motive and to rebut the defensive theory that Rollins wasn't struggling with the officer, he was just trying to make sure his kids were safe?**

**STATE'S RESPONSE**

In Rollins' sixth issue, he claims his trial counsel was ineffective for not objecting to the admission of the drugs found near Rollins' car. Rollins cannot prove either prong of the *Strickland* test. First, the lack of an objection to the drugs isn't tantamount to ineffective assistance because the evidence was admissible. Second, even if counsel's actions were below the objective standard of reasonableness, the record shows that the outcome of the proceedings wouldn't have been different.

## I.     *Admission of evidence standard of review*

A trial court's evidentiary rulings are reviewed for an abuse of discretion.[227] A trial court's ruling on evidentiary matters will not be reversed

---

[227] *De La Paz v. State,* 279 S. W.3d 336, 343 (Tex. Crim. App. 2009).

unless the decision was outside the zone of reasonable disagreement.[228]

## II. Extraneous evidence

Rule 404(b) of the Texas Rules of Evidence prohibits the admission of extraneous offenses to prove conformity or propensity to commit bad acts, but allows admission to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[229] Exclusion of evidence under Rule 404(b) is proper when the evidence does not have any relevance apart from character conformity.[230] Even if the evidence is permissible under Rule 404(b), Rule 403 may preclude its admission if its probative value is substantially outweighed by the danger of prejudice.[231] The test for admission of extraneous offenses requires a showing that the offense is relevant to a material issue in the case and that the relevance outweighs the prejudicial effect.[232] In addition, rebuttal of a defensive theory is also one of the permissible purposes for which evidence may be admitted under Rule 404(b).[233]

---

[228] *Winegarner v. State,* 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *Schiele v. State*, 01-13-00299-CR, 2015 WL 730482, at *6 (Tex. App.—Houston [1st Dist.] pet. ref'd, 2015).

[229] TEX. R. EVID. 404(b).

[230] *Casey v. State,* 215 S.W.3d 870, 880 (Tex. Crim. App. 2007).

[231] TEX. R. EVID. 403; *Moses v. State,* 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Hensley v. State*, 01-14-00615-CR, 2015 WL 6081798, at *5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, no. pet. h.).

[232] *Cantrell v. State,* 731 S.W.2d 84, 89 (Tex. Crim. App. 1987); *see also* TEX. R. EVID. 403, 404(b)(2).

[233] *Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Moses,* 105 S.W.3d at 622; *Schiele*, 2015 WL 730482, at *6.

Under a Rule 403 analysis, the court considers: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[234]

### III. The drugs found at the scene were properly admitted into evidence.

Rollins' counsel wasn't ineffective for failing to object to the drugs found on the scene because they were admissible evidence.[235] Here, the State offered the challenged evidence to prove that Rollins had a motive to and did struggle with Officer Parris intentionally.[236] Rollins motive for resisting was that he didn't want Officer Parris to search him until he disposed of the cocaine and meth. Rollins repeatedly denied that the drugs found at the scene were his.[237] Rollins didn't want to incur another felony drug charge. Rollins testified that he had

---

[234] *Gigliobianco v. State,* 210 S.W.3d 637, 641—42 (Tex. Crim. App. 2006).
[235] *See, e.g., Ex parte White,* 160 S.W.3d 46, 53 (Tex.Crim.App.2004) (defense counsel is not ineffective for failing to object to admissible evidence); *Ex parte Jimenez,* 364 S.W.3d 866, 887 (Tex. Crim. App. 2012).
[236] *See Schiele*, 2015 WL 730482, at *6.
[237] R.R.III:138-139.

previous felony convictions of delivery of a control substance and that he spent time in prison.

Applying a Rule 403 analysis, the first two factors—the probative value of the evidence and the State's need for the evidence—weigh strongly in favor of admissibility.[238] The evidence was probative and necessary to show motive and contradict Rollins' testimony that he just wanted his kids to be safe.[239]

Under the third factor of the unfair prejudice, that is, the tendency of the evidence to suggest decision on an improper basis, the evidence may have had a negative impact with the jury.[240] But the risk of *unfair* prejudice was minimized because the jury heard other evidence admitted by Rollins that he was in possession of marijuana and had previously been convicted twice of the felony intent to deliver a controlled substance.[241] This factor weighs in favor of admissibility.

In considering the fourth and sixth factors, the tendency of the evidence to confuse or distract the jury from the main issues and the time required to develop the evidence weighs in favor of admissibility.[242] "Evidence that consumes an inordinate amount of time to present or answer, for example, might

---

[238] *Gigliobianco,* 210 S.W.3d at 641—42; *Schiele,* 2015 WL 730482, at *6.
[239] *Id.*
[240] *Id.*
[241] *Id.*
[242] *Gigliobianco,* 210 S.W.3d at 641.

tend to confuse or distract the jury from the main issues."[243] Here, the amount of time the State devoted to developing the evidence was not insignificant. The State used 2 witnesses to introduce the drugs that were found on the scene. Their testimony was not lengthy and only spanned approximately 30 pages out of a total of 167 pages of trial record.[244]

Under the fifth factor, any tendency of the evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence is weighed.[245] Here, the charge contained a limiting instruction.[246] Absent evidence to the contrary, a jury is presumed to follow the instruction set forth in the court's charge.[247] This factor weighs in favor of admissibility.

The *Gigliobianco* factors weigh in favor of admissibility; therefore, the trial court did not abuse its discretion in admitting the following challenged evidence: the drugs found on the scene.[248]

### IV.    *Rollins' cannot show that the outcome of the trial would've been different if trial counsel had objected to the evidence.*

---

[243] *Casey,* 215 S.W.3d at 870.
[244] R.R.I:4.
[245] *Gigliobianco,* 210 S.W.3d at 641.
[246] C.R. 59.
[247] *Herrera v. State,* 11 S.W.3d 412, 415—16 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *Schiele*, 01-13-00299-CR, 2015 WL 730482, at *8.
[248] *See Schiele*, 01-13-00299-CR, 2015 WL 730482, at *8.

Even assuming *arguendo* the extraneous-offense evidence was inadmissible, trial counsel's failure to object would not necessarily amount to ineffective assistance in the absence of any evidence of trial counsel's strategy. Even though trial counsel included the exclusion of the found contraband in her motion in limine, the reviewing court still may not speculate the reasonableness of trial counsel's strategy in not objecting to the evidence at trial.[249] Rollins' limine motion was denied so trial counsel would've expected that any objection at trial would've been sustained.[250]

Even if it's presume from a silent record that trial counsel's failure to object or obtain a limiting instruction fell below an objective standard of reasonableness, Rollins still cannot prevail on his ineffective assistance claim because under the second prong of *Strickland,* he hasn't shown that the outcome of his trial would have been different if trial counsel had objected.[251]

Improper admission of evidence is not reversible error if the same or

---

[249] *See Ex parte Varelas,* 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (reviewing court may not speculate as to why trial counsel failed to request limiting instruction when record is silent, even if court has difficulty understanding counsel's inaction).

[250] R.R.II:6; *Cf. Thompson,* 9 S.W.3d at 808 (holding that counsel did not perform deficiently by failing to object to inadmissible hearsay because it was "possible, given the artful questions employed by the prosecutor, appellant's counsel *at that moment* may have reasonably decided that the testimony was not inadmissible and an objection was not appropriate").

[251] *See Strickland,* 466 U.S. at 688—92.

similar evidence is admitted without objection at another point in the trial.[252] After examining the record, there is evidence that the alleged improper admission of the challenged evidence did not influence the jury verdict, or had but a slight effect, because the same or similar evidence was admitted without objection elsewhere at trial.[253] The same or similar evidence included the testimony proffered by Rollins that he gave marijuana to Officer Parris before the struggle and the proffered testimony by Rollins that he had multiple felony drug convictions. The drugs on the scene, the marijuana, and the drug convictions would've been viewed by the jury as same or similar drug related offenses.

Rollins has failed to show that his counsel's conduct caused prejudice— that there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different.[254] Therefore, Rollins has failed to meet either *Strickland* prong and issue six should be denied.

All of Rollins' issues should be overruled and his conviction upheld.

---

[252] *See Mayes v. State,* 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *Brooks v. State,* 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

[253] *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

[254] *See Pena v. State*, 14-13-00102-CR, 2014 WL 2767398, at *5 (Tex. App.—Houston [14th Dist.] pet. ref'd, 2014).

CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that the

judgment of the Trial Court be affirmed in all respects.

Respectfully submitted,

JACK ROADY
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS


/s/ Allison Lindblade

ALLISON LINDBLADE
Assistant Criminal District Attorney
State Bar Number 24062850
600 59th Street, Suite 1001
Galveston, Texas 77551
Tel (409)766-2452/Fax (409)765-3261
allison.lindblade@co.galveston.tx.us

## CERTIFICATE OF SERVICE

The undersigned Attorney for the State certifies a copy of the foregoing brief was sent via email, eFile service, or certified mail, return receipt requested, to Kevin Stryker, 2600 South Shore Blvd., Ste. 300, League City, Texas 77573, styklerlawfirm@gmail.com, on November 16, 2015.

/s/ *Allison Lindblade*
ALLISON LINDBLADE
Assistant Criminal District Attorney
Galveston County, Texas

## CERTIFICATE OF COMPLIANCE

The undersigned Attorney for the State certifies this brief complies with Tex. R. App. Proc. 9.4(i)(3), is a computer generated document, and consists of 13,227 words.

/s/ *Allison Lindblade*
ALLISON LINDBLADE
Assistant Criminal District Attorney
Galveston County, Texas